UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DARRELL GUNN,

                    Plaintiff,

          v.

CORRECTION OFFICER EDWIN AYALA,

                    Defendant.

No. 20-CV-840 (KMK)

OPINION & ORDER

Appearances:

Darrell Gunn
Ossining, NY
*Pro Se Plaintiff*

Sarande Dedushi, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

          Darrell Gunn ("Plaintiff"), proceeding pro se, brings this Complaint pursuant to 42

U.S.C. § 1983 and state law, against Defendant Edwin Ayala ("Defendant"), a former employee

of the New York State Department of Corrections and Community Supervision ("DOCCS"),

alleging that Defendant violated his rights and caused him injury when Defendant struck him

three times in the face while at Montefiore Mount Vernon Hospital ("Montefiore") under

supervisory watch.  (*See* Complaint ("Compl."), Preliminary Statement (Dkt. No. 1); *id.* ¶ 10.)

Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion") pursuant to

Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot. (Dkt. No. 19).)

For the reasons stated herein, the Motion is granted in part and denied in part, and the Court orders the Parties to conduct limited discovery on the question of administrative exhaustion.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed to be true for the purpose of resolving the instant Motion.

Plaintiff was incarcerated at Sing Sing Correctional Facility.  (Compl. ¶ 4.)  On September 11, 2018, Plaintiff was receiving treatment at Montefiore due to Plaintiff's participation in a hunger strike.  (*Id.*, Preliminary Statement; *id.* ¶ 10.)  While at Montefiore, Plaintiff was "on a one[-]on[-]one watch," meaning he was alone with a single custodial officer; one such officer was Defendant.  (*Id.* ¶ 10.)  During this time, Plaintiff asserts that the Defendant "watched [P]laintiff naked as [P]laintiff was washing-up [sic] in [the] bathroom."  (*Id.* ¶ 4.)  Plaintiff also alleges that this had occurred previously.  (*Id.*)  Plaintiff then states that he "refused to allow such . . . behavior to happen to him[.]"  (*Id.*)  Following this refusal, Defendant "became irate at [P]laintiff and state[d]: 'Gunn writes grievances.  He writes everybody-up [sic] in all the prisons he goes to.  Everywhere he goes all he does is write grievances.  That's all he does!'" (*Id.* ¶ 11.)  After making this statement, Defendant "began punching [P]laintiff in [the] face, head and eye . . . violently and brutal[ly] while [P]laintiff was sitting down on [the] hospital bed in [the] hospital room."  (*Id.* ¶ 12.)

After this violent episode, "[P]laintiff was housed in Green Haven [Correctional Facility's] infirmary," (*id.* ¶ 13), where "there are no [Inmate Grievance Resolution Committee ('IGRC')] representatives allowed in infirmary," (Pl.'s Mem. of Law in Opp'n to Mot. ("Pl.'s

2

Opp.") 3 (Dkt. No. 21)).[1]  During this time, Plaintiff "ha[d] no clothes, paper, pen, grievance

complaints, etc.[,] [which were] all confiscated by prison administrators and guards."  (*Id.* at 2–

3.)  Plaintiff avers that these materials, and specifically his eyeglasses, were confiscated in order

to intimidate him into not filing a grievance.  (*Id.* at 3.)

B.  Procedural Background

Plaintiff's Complaint was docketed on January 30, 2020.  (Dkt. No. 2.)  His request to

proceed in forma pauperis was granted on February 5, 2020.  (Dkt. No. 5.)  On June 4, 2021,

Defendant filed a letter motion in anticipation Defendant's Motion.  (Dkt. No. 16.)  Ten days

later, the Court set a briefing schedule.  (Dkt. No. 17.)

Defendant filed the instant Motion on July 13, 2021.  (Not. of Mot.; Def.'s Mem. of Law

in Supp. of Def.'s Mot. To Dismiss ("Def's Mem.") (Dkt. No. 20).)  Plaintiff filed his response

on July 28, 2021.  (Pl.'s Opp.)  Defendant filed a Reply on August 30, 2021.  (Def.'s Reply

---

[1] Plaintiff raised certain factual allegations for the first time in his Opposition to
Defendant's Motion To Dismiss.  "Because [Plaintiff] is proceeding pro se, the Court may
consider new facts raised in opposition papers to the extent that they are consistent with the
complaint, treating the new factual allegations as amending the original complaint."  *Davila v.
Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (italics omitted); *see also Walker v. Schult*, 717
F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider
factual allegations made by a pro se party in his papers opposing the motion." (italics omitted));
*Jahad v. Holder*, No. 19-CV-4066, 2021 WL 3855445, at *1 n.2 (S.D.N.Y. Aug. 26, 2021) ("For
purposes of this motion, the [c]ourt accepts as true the factual allegations in the complaint and
the opposition papers, to the extent that they are consistent, and draws all reasonable inferences
in [the] [p]laintiff's favor."); *Hawthorne by Hawthorne v. County of Putnam*, 492 F. Supp. 3d
281, 289 n.3 (S.D.N.Y. 2020) ("For purposes of this motion, the [c]ourt accepts as true the
factual allegations in the complaint and the opposition papers, to the extent they are consistent,
and draws all reasonable inferences in the plaintiff's favor."); *Brooks v. Jackson*, No. 11-CV-
6627, 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013) ("[B]ecause a pro se plaintiff's
allegations must be construed liberally, it is appropriate for a court to consider factual allegations
made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent
with the complaint." (italics omitted)).  Given that the new facts raised in Plaintiff's Opposition
are consistent with those raised in the Complaint, the Court will accept and consider them.

Mem. of Law in Further Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 22).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

4

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).  Moreover, where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)

5

(quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

    B.  Analysis

        1.  Eleventh Amendment Immunity

            i.  The Eleventh Amendment Bars Suits Against State Agents Such as
            Defendant for Monetary Damages

To the extent Plaintiff sues Defendant for monetary damages caused in his official capacity, those claims must be dismissed.[2]  The Eleventh Amendment of the United States Constitution states: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "This withdrawal of jurisdiction effectively confers an immunity from suit."  *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).  The Supreme Court has made clear that the Amendment's shield extends to state agencies and state officials sued in their official capacity for monetary damages.  *See id.* at 142–47; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).  The Second Circuit

---

[2] "The Complaint does not specify whether Defendant[] [is] sued in [his] official or individual capacit[y]."  *Drayton v. Young*, No. 17-CV-5440, 2018 WL 5831324, at *1 n.1 (S.D.N.Y. Nov. 7, 2018).  Because "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest,'" *Sykes*, 723 F.3d at 403 (italics omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)), the Court interprets the Complaint to have sued Defendant in both capacities and analyzes each.

has echoed this holding.  *See, e.g.*, *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) ("The [E]leventh [A]mendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *Lebron v. Mrzyglod*, No. 14-CV-10290, 2019 WL 3239850, at *13 n.9 (S.D.N.Y. July 18, 2019) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)).

"New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983."  *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977)); *see also Sabino v. Dep't of Corr. & Cmty. Supervision*, No. 19-CV-7268, 2019 WL 3858622, at *1 (S.D.N.Y. Aug. 16, 2019).  Because Defendant is an employee of "[DOCCS] [,] [which] is an arm of the State of New York," *Dubarry*, 2021 WL 3604756, at *1, Plaintiff's claims for money damages against Defendant in his official capacity must be dismissed.  *See Ying Jing Gan*, 996 F.2d at 529 ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities.").

ii.  Exceptions to the Eleventh Amendment Do Not Apply to Retrospective Injunctive or Declaratory Relief

"[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71

n.14 (1996) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  However, such injunctive relief is only available to remedy "ongoing" or "prospective" wrongs.  *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).  Declaratory relief against a state or its agents is also only available for ongoing or prospective violations of law.  *See Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  Plaintiff does not assert that the misconduct alleged is ongoing or is likely to restart.  (*See generally* Compl.)  Thus, Plaintiff's prayers for declaratory and injunctive relief would be "tantamount to an award of damages for a past violation of federal law, even though styled as something else."[3]  *Papasan v. Allain*, 478 U.S. 265, 278 (1986).  Because such relief is barred by the Eleventh Amendment, *see Vega*, 963 F.3d at 281 (citing *Papasan*, 478 U.S. at 278), the Court dismisses Plaintiff's claims for injunctive and declaratory relief against Defendant in his official capacity, *see Pappas v. Lorintz*, 832 F. App'x 8, 12–13 (2d Cir. 2020) (summary order) (affirming district court's denial of injunctive relief because the harm alleged by a state actor "effectively mak[es] it a suit to remedy a past violation as opposed to an ongoing one"), *cert. denied*, 141 S. Ct. 2628 (2021).

### 2.  Plaintiff's Alleged Harm Constitutes a Constitutional Violation

Plaintiff alleges a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  (*See* Compl., Preliminary Statement.)  "A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the

---

[3] Plaintiff claims that he is seeking injunctive relief in the Preliminary Statement of the Complaint, though injunctive relief is not specifically named in the Complaint's Prayer for Relief.  (*Compare* Compl., Preliminary Statement, *with id.*, Prayer for Relief.)  Once again, because Plaintiff brings this action pro se, the Court construes the Complaint "liberally," *Sykes*, 723 F.3d at 403, and thus affords Plaintiff and his Complaint the benefit of the doubt.

conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *see also Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). The subjective prong may be met by a showing that Defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991)). And "in excessive force cases, the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 262 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Accepting Plaintiff's allegations as true, which the Court must when adjudging a motion to dismiss, *Erickson*, 551 U.S. at 94, Plaintiff meets the subjective standard. Plaintiff does not make mention of a commotion or tumult for which force would have a mitigating or calming effect. (*See generally* Compl., Preliminary Statement; *id.* ¶¶ 10–17.) Rather, Plaintiff alleges that the violence was "unprovoked." (*Id.*, Preliminary Statement.) This satisfies the subjective standard. *See United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) ("[T]he subjective element is satisfied in this case as there was absolutely no reasonably perceived need for the application of force." (citing *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994))); *see also Porter v. Goord*, 467 F. App'x 21, 23 (2d Cir. 2012) (summary order) (reversing grant of summary judgment where genuine issue of fact remained regarding whether an inmate "provoked" officer, prompting subsequent violence); *Fabrizio v. Smith*, No. 20-CV-11, 2021 WL 2211206, at *5 (N.D.N.Y. Mar. 10, 2021) (denying motion to dismiss in part where the plaintiff alleged an Eighth Amendment violation after corrections officers used force against the plaintiff but "[the] [p]laintiff did not provoke [the] [d]efendants and did not present any threat to [the] [d]efendants"), *report and recommendation adopted*, 2021 WL 2211023 (N.D.N.Y. June 1,

2021); *Brewer v. Kamas*, 533 F. Supp. 2d 318, 328 (W.D.N.Y. 2008) ("[I]f [the] [p]laintiff

provoked [the] [d]efendants' use of force beyond application of the physical restraints, the

[d]efendant's subjective intent was more likely to subdue and control [the] [p]laintiff than to

inflict punishment or pain.").

      To adjudicate whether the objective standard has been met, i.e., whether the force was

undertaken "maliciously and sadistically for the very purpose of causing harm," the Supreme

Court instructs courts to consider: (1) "the extent of injury inflicted"; (2) "the need for the

application of force"; (3) "the relationship between the need and the amount of force used";

(4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the

threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on

the basis of the facts known to them." *Whitley v. Albers*, 475 U.S. 312, 320–321 (1986)

(quotation marks and citations omitted); *see also Hudson*, 503 U.S. at 7 (applying the *Whitley*

factors to determine "whether the use of force could plausibly have been thought necessary"

against an inmate as part of the Eighth Amendment inquiry (citation omitted)).

      Plaintiff's allegations also meet the objective standard.  For example, Plaintiff alleges that

Defendant "viciously punched [P]laintiff with closed fists . . . in [the] face [three] times causing

swelling, bruising and [a] black eye" as well as "nonstop headaches [and] blurry vision."

(Compl., Preliminary Statement; *id.* ¶ 16).  Plaintiff also alleges that he suffered a heavy

emotional and psychological toll from the alleged beating, including "high levels of

stress, . . . anxiety, anger, agony, depression, fear, . . . paranoia, . . . low self-esteem, . . . and

despair."  (*Id.* ¶ 16.)  Taken together, Defendant's actions certainly meet this threshold.  *See*

*Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (holding that a prisoner's allegations that corrections

officer "punched, kicked, kneed, choked, and body slammed" him without any provocation,

causing injuries requiring medical treatment, stated a claim for use of excessive force in violation

of Eighth Amendment); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 541 (S.D.N.Y. 2005)

(holding that an allegation that the defendants "rushed into [the plaintiff's] cell, pushed him

down onto his bed, twisted his arm until it broke and punched and beat his head and body"

satisfies the objective component of the plaintiff's excessive force claim under the Eighth

Amendment).  Therefore, Plaintiff has plausibly alleged a claim of an Eighth Amendment

violation and the Motion with respect this claim is denied.

### 3.  Plaintiff's Failure to Pursue Administrative Remedies

Defendant's principal argument in support of his Motion is that Plaintiff failed to exhaust

his administrative remedies.  (Def.'s Mem. 3–6; *see also* Def.'s Reply Mem. 2–4.)  Plaintiff both

preempts and responds to this argument by asserting that administrative remedies were

unavailable to him, citing a fear of retaliation as well as a lack of resources to draft and file a

grievance.  (Compl. ¶¶ 13, 18; Pl. Mem. 2–4.)  For the reasons stated herein, the Motion with

respect to this claim is also denied.

### i.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The Supreme Court has made

clear that this "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more

conversationally, may not bring any action) absent exhaustion of available administrative

remedies."  *Ross v. Blake*, 578 U.S. 632, 638 (2016); *see also Jones v. Bock*, 549 U.S. 199, 211

(2007) ("There is no question that exhaustion is mandatory under the PLRA and that

11

unexhausted claims cannot be brought in court."); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)
("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").
Moreover, the exhaustion requirement applies to "all inmate suits about prison life." *Porter v.
Nussle*, 534 U.S. 516, 532 (2002); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012).
So, too, does the exhaustion requirement apply to actions for monetary damages even when
monetary damages are not available as an administrative remedy. *See Booth v. Churner*, 532
U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through
administrative procedures").

Adherence to the exhaustion requirement "'means using all steps that the agency holds
out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*,
548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)); *see also
Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (holding that the PLRA "requires proper
exhaustion, which means using all steps that the prison grievance system holds out" (citations,
alterations, and quotation marks omitted)). Said more plainly, the PLRA demands "strict
compliance with the grievance procedure . . . , or else dismissal must follow inexorably."
*McCoy v. Goord*, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (alteration and quotation marks
omitted). Finally, exhaustion must occur prior to Plaintiff filing suit; "[s]ubsequent exhaustion
after suit is filed therefore is insufficient." *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001),
*overruled in part on other grounds by Porter*, 534 U.S. 516.

The grievance program applicable here is the DOCCS Inmate Grievance Program
("IGP"), which provides for a "three-step grievance process." *Colon v. Annucci*, 344 F. Supp. 3d
612, 641 (S.D.N.Y. 2018). The Second Circuit has described the process as follows:

> To initiate the process, an inmate must file a written complaint with the [IGRC], a facility committee composed of inmates and appointed staff members. *See* N.Y.C.R.R. § 701.4–.5. . . . Second, the inmate can appeal an unfavorable IGRC determination to the superintendent of the facility. *See* N.Y.C.R.R. § 701.5(c) . . . . Finally, an inmate can appeal an unfavorable superintendent's determination to the Central Office Review Committee ("CORC"). *See* N.Y.C.R.R. § 701.7(c) . . . ; Directive No. 4040.

*Amador v. Andrews*, 655 F.3d 89, 96–97 (2d Cir. 2011); *see also Khudan v. Lee*, No. 12-CV-8147, 2016 WL 4735364, at *1 (S.D.N.Y. Sept. 8, 2016) (describing three-step IGP procedure), *appeal dismissed*, 2016 WL 10100723 (2d Cir. Dec. 8, 2016).  Grievances must be filed within 21 days, though a supervisor may grant an extension upon an inmate's application.  *See* 7 N.Y.C.R.R. §§ 701.5(a)(1), 701.6(g).  Additionally, grievances alleging "employee misconduct meant to annoy, intimidate[,] or harm an inmate" are subject to an expedited administrative review, meaning they are immediately referred to the facility's superintendent and must also be exhausted through a final appeal to the CORC.  *Amador*, 655 F.3d at 97 (quotation marks omitted) (citing 7 N.Y.C.R.R. §§ 701.2, 701.8).  Only after completing all three steps of the IGP in a timely manner may an inmate initiate suit, *see Ross*, 578 U.S. at 638–39; *Williams*, 829 F.3d at 122, "provided no exception to exhaustion applies," *White v. Westchester County*, No. 18-CV-730, 2018 WL 6726555, at *6 (S.D.N.Y. Dec. 21, 2018).

### ii.  Exceptions to the Exhaustion of Administrative Remedies

The PLRA "contains its own, textual exception to mandatory exhaustion."  *Ross*, 578 U.S. at 642.  As the Supreme Court has explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.  And that limitation on an inmate's duty to exhaust . . . has real content. . . . [A]n inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."

*Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738).

The Supreme Court has identified at least "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 643. First, an "administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643–44. Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. These three circumstances "do not appear to be exhaustive," *Williams*, 829 F.3d at 123 n.2, but they do "guide the Court's inquiry," *Khudan*, 2016 WL 4735364, at *5.

The Complaint speaks to neither the first nor the second exception; Plaintiff concedes that the grievance procedure was "available" but for his fear of retaliation and his lack of resources. (Compl. ¶ 18; *see also* Def.'s Mem. 6.) As such, the Court directs its attention to the third exception: whether an official's actions inhibited or thwarted Plaintiff's ability to file a grievance.

### iii.  Defendant's Actions to Thwart Plaintiff's Ability to File a Grievance

"'[A] defendant may be estopped from asserting non-exhaustion where he takes some action to inhibit an inmate from accessing available administrative remedies.'" *Rambert v. Mulkins*, No. 11-CV-7421, 2014 WL 2440747, at *12 (S.D.N.Y. May 30, 2014) (quoting *Martin v. City of New York*, No. 11-CV-600, 2012 WL 1392648, at *7 (S.D.N.Y. Apr. 20, 2012)); *see also Lewis v. Eldridge*, No. 13-CV-1485, 2016 WL 1718253, at *7 (S.D.N.Y. Apr. 27, 2016).

14

The Second Circuit has identified four categories of actions an official may take that bar a defendant from making an exhaustion of remedies argument: "verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers[.]" *Amador*, 655 F.3d at 103.

In his Complaint as well as his Opposition to Defendant's Motion, Plaintiff offers arguments concerning the first and third categories.  Specifically, Plaintiff asserts that he did not avail himself of the administrative grievance procedure "because of his fear of retaliation," (Compl. ¶ 18; *id.* ¶ 13), and because he was not provided eyeglasses, writing utensils, or grievance forms, all of which were necessary for him to draft and file the grievance, (*id.* ¶ 18; Pl.'s Opp. 2–3).

Defendant, in support of his Motion, argues that Plaintiff's generalized fear of retaliation cannot overcome his exhaustion of remedies argument.  (Def.'s Mem. 5–6).  Defendant further argues that because Plaintiff "does not allege any facts that he requested a pen or paper to file a grievance . . . or that such a request was denied by facility staff," he cannot sustain his claim that his administrative remedy in the form of the grievance process was unavailable.  (Def.'s Reply Mem 2.)  Defendant also asserts that because Plaintiff could have requested an extension to file the grievance but failed to do so, Plaintiff cannot plausibly argue that administrative remedies were unavailable to him.  (*Id.* at 3 ("'Although a grievance generally must be filed within 21 days of the incident giving rise to the complaint, N.Y. Comp. Codes R. & Reg. tit 7, §701.5(a)(1), the grievance regulations provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident.'" (quoting *Green v. Schmelzle*, 239 F. Supp. 3d 669, 673 (W.D.N.Y. March 8, 2017))).)

The Court's decision on this issue turns on the fact that a plaintiff's failure to exhaust administrative remedies is an affirmative defense.  "Because failure to exhaust is an affirmative defense and may be excused, courts in this Circuit have denied motions to dismiss complaints brought on that basis, even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure." *Daly v. New York City*, No. 16-CV-6521, 2017 WL 2364360, at *3 (S.D.N.Y. May 30, 2017) (collecting cases), *report and recommendation adopted sub nom. Daly v. City of New York*, 2017 WL 2963502 (S.D.N.Y. July 11, 2017); *see also Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967, at *7 (S.D.N.Y. Dec. 11, 2019) (denying motion to dismiss and "order[ing] the [p]arties to conduct limited discovery on the question of administrative exhaustion"); *Miller v. Annucci*, No. 17-CV-4698, 2019 WL 4688539, at *10–13 (S.D.N.Y. Sept. 26, 2019) (denying motion to dismiss as to certain claims and ordering the parties to conduct limited discovery on the issue of administrative exhaustion).

The Court agrees with that approach here; absent discovery, "there is ambiguity in the record as to the circumstances surrounding failure to exhaust." *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1285417, at *3 (S.D.N.Y. Mar. 28, 2013).  In light of this ambiguity, "it would be premature to dismiss the Complaint at this stage, when it is 'possibl[e] [that] administrative remedies [were rendered] unavailable' to Plaintiff." *Wing*, 2019 WL 6732967, at *7 (alterations in original) (quoting *Shaw v. Ortiz*, No. 15-CV-8964, 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016)).  Therefore, this question is more "properly reserved for a motion for summary judgment," when a more fulsome record can shed light on "whether Plaintiff in fact exhausted his administrative remedies and whether any non-exhaustion is excused." *Khudan v. Lee*, No. 12-CV-8147, 2015 WL 5544316, at *5 (S.D.N.Y. Sept. 17, 2015).

Accordingly, the Court denies Defendant's instant Motion for failure to exhaust and orders the Parties to conduct limited discovery solely on the issue of administrative exhaustion to be completed within 60 days of the date of this Opinion.  The Parties shall focus on Plaintiff's fear of retaliation as well as the resources given to or taken away from Plaintiff.

### 4.  State Law Claims

"Finally, to the extent Plaintiff seeks to assert state law claims of negligence, they are barred by New York Correction Law § 24, which provides that '[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee.'" *McCray v. Lee*, No. 16-CV-1730, 2021 WL 4392280, at *11 (S.D.N.Y. Sept. 24, 2021) (quoting N.Y. Corr. Law § 24); *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court).  "Courts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) (collecting cases).  New York Corrections Law § 24 applies here, given that the actions in question "arose as a result of [his] discharging [his] duties as [a] correctional officer[]." *McCray*, 2021 WL 4392280, at *11 (quoting *Boyd v. Selmer*, 842 F. Supp. 52, 57 (N.D.N.Y. 1994)).  Finally, there is no refuge in the New York State constitution, which does not create a private right of action "'where . . . remedies are available under § 1983.'" *Id.* (ellipsis in original) (quoting *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 520 (S.D.N.Y. 2013)).  Therefore, the Court grants Defendant's Motion To Dismiss with respect to all claims Plaintiff makes sounding in state law.

17

III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part. Specifically, Plaintiff's claims against Defendant in his official capacity are dismissed, as are Plaintiff's state law claims.  Plaintiff's federal claim against Defendant in his personal capacity survives.  With respect to Plaintiff's surviving claim, the Court orders the Parties to conduct limited discovery on the question of administrative exhaustion, to be completed within 60 days of the date of this Opinion.

With respect to Plaintiff's dismissed claims, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice.  *See Terry v. Incorporated Village of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").  Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Opinion, addressing the deficiencies identified herein.  The amended complaint will replace, not supplement, the complaint currently before the Court.  It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, this Action could be dismissed with prejudice.

18

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt.

No. 19), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.

SO ORDERED.

Dated:    December 1, 2021
          White Plains, New York

_____
              KENNETH M. KARAS
          United States District Judge

19